**Not For Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| RICHARD GREEN, | : | |
| | : | Civil No. 17-8460 (ES) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| STEPHEN JOHNSON, | : | |
| | : | |
| Respondent. | : | |

---

SALAS, DISTRICT JUDGE

Petitioner Richard Green ("Petitioner"), a prisoner confined at New Jersey State Prison in Trenton, New Jersey at the time of filing, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1, ("Petition" or "Pet.")).  For the reasons stated below, the Petition will be denied.

## I.   BACKGROUND[1]

The New Jersey Superior Court, Appellate Division provided the following factual summary:

> The evidence presented to the jury upon which the convictions were based disclosed that during the early morning hours of May 9, 2005, Plainfield police were dispatched to the area outside an apartment building located at 709 West Front Street after Central received a report of a gunshot. Upon their arrival, police found the victim, Manuel Perez, lying face down and bleeding from the right side of his head. Paramedics arrived shortly thereafter and pronounced Perez dead within moments of their arrival. They noted, however, that his skin was cool and surmised that Perez had been dead for "some time." No witnesses came forward to the scene at that time.

---

[1]    The factual background is taken from the record submitted by the parties; the facts related to the individual claims for relief are discussed in the analysis section of the Opinion.

The investigation into Perez's death led police to defendant, whom Detective Francis Wilson was already interviewing in connection with an unrelated matter. After taking a statement in the unrelated matter, Detective Wilson asked defendant whether he would be willing to answer questions related to Perez's death. Based upon information Detective Wilson received from defendant at that time, Detective Wilson called Detective Harvey Barnwell, the case investigator from the Union County Prosecutor's Office. After Detective Wilson summarized for Detective Barnwell the information given by defendant, Detective Barnwell suggested they re-advise defendant "of his constitutional rights so that [they] could separate the two cases." After re-administering *Miranda* warnings and after defendant waived his rights, Detective Wilson proceeded to take a written statement from defendant about what, if any, involvement he may have had in the shooting.

Defendant initially told Detective Wilson he and a man named Ronald Cherry were involved in the incident, but it was Cherry who actually shot Perez. During the course of this statement, Detective Wilson learned Cherry was incarcerated at the time of the shooting and he confronted defendant with this information. Defendant was then asked if he was still aware of his *Miranda* rights, to which defendant respondent affirmatively. At that time, another written statement was taken in which defendant stated that his friend, Troy Keets, was really the person with him the night Perez was shot. Defendant told Detective Wilson when he and Keets saw Perez looking to purchase drugs, Keets ordered defendant to get "the other" gun, which was broken. He admitted they planned to rob Perez. Defendant told the detective he struck Perez on the back of his neck with the broken gun, forcing Perez to bump into Keets, which caused Keets's gun to go off, fatally wounding Perez. Keets then repeatedly told defendant that he "didn't mean to do it."

Witnesses from the neighborhood, who knew defendant and Keets, testified. Carol Spann, a resident of 709 West Front Street, testified that she saw defendant and Keets sitting together outside 709 West Front Street the night of the murder, she heard a "pop," and she believed she heard Keets saying, "Let's get out of here." Jamice Purnell, who lived at 705 West Front Street, testified that defendant and Keets were in her house prior to the shooting but eventually left. She did not hear a gunshot, but her grandmother did. She went to her grandmother's room to look outside, and when she returned to her room, defendant and Keets were already there.

Purnell's aunt, Antoinette Whitley, who also lived at 705 West Front

2

Street, testified that she saw Keets take a gun outside prior to the shooting. She heard a gunshot shortly after the two men left. Defendant and Keets then returned to the room afterwards. Keets said the shooting was an accident and defendant remarked that Keets did "something stupid."

Damian Brown told police that "a few days after" Perez's death, he received a call asking him to pick up a man who wanted to sell a gun. He gave a physical description of the man he picked up that fit Keets's description, but was unable to pick out Keets's picture from a photo array. At trial, however, he testified the gun was his, and Keets and defendant were doing him a favor "to sell it." He claimed his statement to the Prosecutor's Office "was different" than reported, but when confronted with his statement, he agreed that nowhere in the statement did he say the gun belonged to him.

Dwayne Fleming, a former county jail inmate, testified that defendant visited his cellmate on June 27, 2005. According to the cellmate, defendant said he shot a Mexican individual at 709 Front Street because the individual had "stepped on his toes selling drugs." Defendant did not testify, nor did any witnesses testify on his behalf. Defense counsel argued before the jury that police coerced the statements he gave to them, that felony murder was not a possible charge because Keets only intended to collect money he was owed, and, therefore, there was no robbery.

*State v. Green*, No. A-0680-09T1, 2012 WL 2401674, at *1–2 (N.J. Super. Ct. App. Div. June 27, 2012)

The jury convicted Petitioner of felony murder, N.J.S.A. 2C:11–3(a)(3) (Count One); second-degree armed robbery, N.J.S.A. 2C:15–1(a)(1), as a lesser-included offense of first-degree robbery (Count Two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4a (Count Three); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39–5b (Count Four). *Id.* at 1. Petitioner thereafter moved for a judgment notwithstanding the verdict or, alternatively, a new trial, which the court denied. *Id.* at 2. At sentencing, the court imposed a forty-year aggregate prison term, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43–7.2. *Id.*

3

Petitioner filed a direct appeal, and the Appellate Division affirmed the conviction and sentence. *Id.* Petitioner filed a petition for certification, which was denied by the New Jersey Supreme Court on January 6, 2013. *State v. Green*, 65 A.3d 835 (N.J. 2013). He thereafter filed a petition for post-conviction relief ("PCR"), which the court denied on January 12, 2015. (D.E. No. 12-12, Trial Court PCR Opinion ("PCR Opinion")). The Appellate Division then affirmed the denial. *State v. Green*, No. A-3584-14T2, 2017 WL 1034556 (N.J. Super. Ct. App. Div. Mar. 17, 2017). Petitioner's petition for certification to the New Jersey Supreme Court was also denied. *State v. Green*, 170 A.3d 302 (N.J. 2017).

On October 9, 2017, Petitioner filed the instant habeas petition, alleging five claims for relief. (D.E. No. 1). Specifically, Petitioner argues that: (i) "by providing the jury with a flawed and misleading example of accomplice liability in its instructions, the court created the possibility tha[t] [Petitioner] would be wrongly convicted as an accomplice to robbery, and accordingly, convicted of felony murder" (Ground One); (ii) "the Court erred in permitting the prosecutor, on direct examination of Jamice Purnell, to read [substantial] portion of Purnell's prior statement into [the] record, in violation of procedural requirements" (Ground Two); (iii) "the court commit[ed] reversible error in denying [Petitioner's] motion for a new trial on robbery and felony murder charges" (Ground Three); (iv) "trial counsel failed to effectively present petitioner's defense, which was that he did not confess to aiding and abetting a robbery, that the statement was actually an agreement for Petitioner's cooperation in the murder investigation, and that there was no proof of a robbery to support a felony murder charge" (Ground Four); and (v) "trial counsel failed to adequately confer with Petitioner about defense strategy; as a result, exculpatory testimony was not produced and state witnesses were not properly cross-examined." (Ground Five). (*Id.*). Respondent filed an answer (D.E. No. 12 ("Answer")) and Petitioner did not file a reply.

## II.    LEGAL STANDARDS

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   Petitioner has the burden of establishing each claim in the petition.   *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).   Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts.   *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When a state court has adjudicated a petitioner's federal claim on the merits,[2]  a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts

---

[2]    "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."   *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

in light of the evidence presented in the State court proceeding.'"   *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."   *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."   *Williams*, 529 U.S. at 413.   As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record.   *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply.   First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005).   Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally

defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III.  ANALYSIS

### A.  Jury Instructions (Ground One)

In his first ground for habeas relief, Petitioner argues that the trial court's jury instructions on accomplice liability were "flawed and misleading" due to a hypothetical example the judge used.  (Pet. 4).  Petitioner raised this claim in his direct appeal, where it was rejected by the Appellate Division:

> Defendant first argues the trial court erred when it provided a misleading example of accomplice liability in its jury instructions, creating the possibility defendant would be wrongly convicted as an accomplice to robbery and felony murder.  Because there was no objection to the court's instruction, we review the claimed error under the plain error standard.  R. 2:10–2.  Under Rule 2:10–2, errors or omissions will be disregarded by the appellate court unless they were "clearly capable of producing an unjust result."  An error is capable of producing an unjust result if, in terms of its effect in a jury trial, the magnitude of the error was "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached."  *State v. Macon*, 57 N.J. 325, 336 (1971).
>
> "[C]lear and correct jury instructions are essential for a fair trial." *State v. Brown*, 138 N.J. 481, 522 (1994).   "A charge is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations.   Thus, the court must explain the controlling legal principles and the questions the jury is to decide." *State v. Martin*, 119 N.J. 2, 15 (1990).

Under N.J.S.A. 2C:2–6(c),

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) With the purpose of promoting or facilitating the commission of the offense; he
>
> > (a) Solicits such other person to commit it;
> >
> > (b) Aids or agrees or attempts to aid such other person in planning or committing it; or
> >
> > (c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or
>
> (2) His conduct is expressly declared by law to establish his complicity.

"[A] jury must be instructed that to find a defendant guilty of a crime under a theory of accomplice liability, it must find that he 'shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.'" *State v. Bielkiewicz*, 267 N.J. Super. 520, 528 (App. Div.1993) (quoting *State v. Fair*, 45 N.J. 77, 95 (1965)).   Here, the accomplice liability charge applied to the charge of robbery.   A person is guilty of robbery if, in the course of committing a theft, he:

> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

[N.J.S.A. 2C:15–1(a).]

8

The trial court, in its instructions on accomplice liability, provided the following example to the jury:

> Your friend calls you on the phone and says I need a ride to the bank, I have to make a withdrawal.  As you pull up in front of the bank with your friend he pulls out a gun and says I'll be right back.  You see the gun and you now realize he is not making a withdrawal, he is going to rob the bank.  You sit and wait in the car for him to return.
>
> Your friend comes running out of the bank and explains let's get out of here before the cops arrive. In this example you now have—you have now shared the purpose for him to commit the act.  You knew he had the gun, you assisted him or aided him in committing the crime.
>
> You did this by driving him to the bank, waiting for him, and then driving him away.  You did all of this knowing he was going to rob the bank.  You shared the purpose with him to commit the crime. Therefore, you are an accomplice.  The difference between the two examples is the phrase share the purpose to commit the crime.

Shortly after reciting the disputed example above, the court specifically instructed the jury that it should only convict defendant under accomplice liability if he had the requisite mental state:

> It is not sufficient to prove only that the defendant had knowledge that another person was going to commit the crime charged.  The State must prove that it was . . . defendant's conscious object that the specific conduct charged be committed.
>
> To reiterate, the elements of accomplice liability are, one, that an offense was committed, two, that this defendant did aid, or agree, or attempt to aid another in committing the offense, three, that the defendant's purpose was to promote or facilitate the commission of the offense, four, that this defendant possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act.

9

> We are satisfied the additional instructions to the jury following the example made clear to the jury that mere awareness that another person will commit a crime, without the specific intent that the crime be committed, will not suffice for accomplice liability.   The example did not accurately illustrate the required mental state, but any confusion was immediately clarified through the additional instructions.   Also, defendant admitted in his statement to police that he and Keets shared an intention to rob the victim.   Thus, we conclude any confusion resulting from the example was not an error clearly capable of producing an unjust result.

*Green*, 2012 WL 2401674, at *3–5.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief."   *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)).   A petitioner can therefore only show his entitlement to habeas relief based on an allegedly insufficient or improper jury instruction where the petitioner proves that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."   *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47)).   A reviewing court must review a jury instruction *in the context of the entire charge given by the trial court and in light of the whole of Petitioner's trial*.   *See Id.* (emphasis added).   That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief, a petitioner can only prevail on such a claim by showing that the instruction rendered the trial fundamentally unfair.   *Id.*

Reviewing the jury instructions as a whole, the Court is satisfied Petitioner's constitutional rights were not violated.   While the hypothetical situation discussed by the trial court at the beginning of its instructions did not accurately illustrate the required mental state for an accomplice, the instructions given shortly thereafter were accurate.   Several times, the court clearly stated that in order to find Petitioner guilty of robbery under the theory of accomplice

liability, the jury must find beyond a reasonable doubt that he possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal acts.   (D.E. No. 12-30, Respondent's Answer, Ex. 12T, Trial Tr. 33:20–22; 36:12–17; 37:9–12).   In light of the multiple occasions where the court unequivocally stated that Petitioner needed to have the requisite *mens rea* to commit robbery, and that Petitioner confessed to having the intention to rob the victim, the Court agrees with the Appellate Division that the instruction was not capable of producing an unjust result.   *Duncan*, 256 F.3d at 203; *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 478–79 (3d Cir. 2017) (giving AEDPA deference and upholding the state court's conclusion that ambiguous jury instructions did not violate defendant's constitutional rights). Accordingly, the Court finds that this decision by the state court is not contrary to, and did not involve an unreasonable application of, clearly established Federal law.   Petitioner is not entitled to habeas relief on this ground.

### B.      Prior Statement During Testimony (Ground Two)

In Ground Two of his Petition, Petitioner argues that his constitutional rights were violated when the state court permitted the prosecutor, on direct examination of Jamice Purnell, to read substantial portion of her prior statements into the record.   (Pet. at 6).   Whether it was considered a prior inconsistent statement or a recorded recollection, Petitioner argues its admittance was improper under the New Jersey Rules of Evidence.   (*Id.*).

Petitioner raised this argument on direct appeal and the Appellate Division found it to be without merit:

> Defendant next argues the trial court erred in permitting the prosecution to read substantial portions of Purnell's prior statement into the record during her direct examination at trial.   "[A]n evidentiary determination made during trial is entitled to deference and is to be reversed only on a finding of an abuse of discretion."

11

*Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 202 N.J. 369, 374 (2010).  The rationale underlying such deference sterns from the principle that "the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion."  *Id.* at 383–84.  Therefore, we will "uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record."  *MacKinnon v. MacKinnon*, 191 N.J. 240, 253–54 (2007).  Even when the dispute concerns a trial judge's evaluation of underlying facts, "we will accord deference unless the trial court's findings went so wide of the mark that a mistake must have been made."  *New Jersey Div. of Youth and Family Servs. v. M.M.*, 189 N.J. 261, 279 (2007).  Additionally, because defense counsel failed to object when portions of Purnell's testimony were read into the record, we view the claimed error under the "plain error" standard.  *Martin*, *supra*, 119 N.J. at 15; R. 2:10-2.

A witness's prior statement, although hearsay, may be read into the record if the witness is unable to testify fully and accurately because of insufficient present recollection.  N.J.R.E. 803(c)(5).  Conditions precedent to the reading of such statements into the record require that the statement be contained in a writing, that the statement was recorded contemporaneously or close in time to the subject matter of the statement, that the statement was made by the witness or at the witness's direction for the purpose of recording the statement at the time that it was given, and that the statement concerns a matter about which the witness had personal knowledge at the time the statement was given.  *Ibid.*  Although the statement may be read into the record, it may not be introduced as an exhibit.  *Ibid.*

During her testimony, Purnell repeatedly testified as to her lack of recollection.  She was given an opportunity to review her statement but continued to testify as to a lack of recollection of specific facts as set forth in her previous statement.  While the prosecutor did not ask Purnell whether her recollection had been refreshed after reviewing her prior statement a number of times, defendant does not dispute that the timing of the statement was in temporal proximity to the shooting, that it concerned a matter about which Purnell, at least at the time she provided the statement, had personal knowledge, and that Purnell actually provided the statement.  Consequently, any error in permitting the prosecutor to read portions of her testimony to the jury, without conducting a formal N.J.R.E. 104 hearing and without going through all of the prerequisites for its use, was harmless.

12

*Green*, 2012 WL 2401674, at *5–6.

Generally, the admissibility of evidence is a question of state law which is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991) (observing that "federal habeas corpus relief does not lie for errors of state law" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules").  If, however, a petitioner can demonstrate that the admission of the challenged evidence deprived him of the "fundamental elements of fairness in [his] criminal trial," then he may establish a Fourteenth Amendment due process violation.  *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992)).  A petitioner must show that state court's evidentiary ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair."  *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).  Significantly, the United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Petitioner's arguments relate solely to the failure of prosecutors and the court to undertake the necessary procedural steps before admitting the statements.  (Pet. at 6).  The Appellate Division found, however, that despite the trial court's decision not to hold a hearing about its admissibility, any such error was harmless because the necessary prerequisites were present such that the statements were properly admitted.  *Green*, 2012 WL 2401674, at *6.  The Court does not find that the state court's decision was so arbitrary or prejudicial that it rendered the entire trial fundamentally unfair.  To the contrary, on cross-examination, counsel for Petitioner utilized Ms. Purnell's prior statement to suggest that she was merely "parroting" her mother when she gave it

13

and it was therefore not reliable.   (D.E. No. 12-25, Respondent's Answer, Ex. 7T, Trial Tr. 72-25 to 73-4).   Accordingly, the Court finds that this decision by the state court is not contrary to, and did not involve an unreasonable application of, clearly established Federal law and Petitioner is not entitled to habeas relief on this ground.

### C.      Sufficiency of the Evidence (Ground Three)

In his third ground for relief, Petitioner argues that the trial court committed reversible error in denying Petitioner's motion for a new trial on robbery and felony murder charges. Specifically, he states that the State did not present any evidence that he was guilty of robbery or felony murder other than "a misunderstanding of defendant's statement giving to investigators for the felony murder and robbery."   (Pet. at 7).   There were no witnesses who saw Petitioner shoot the victim, and there were statements from the State's witnesses corroborating that Mr. Keets was the one with a reason to harm the victim.   (*Id.*).

Petitioner raised this claim on direct appeal, where it was rejected by the Appellate Division:

> Defendant next asserts the trial court committed reversible error when it denied his motion for a new trial on the robbery and felony murder charges because the evidence before the jury was solely based upon defendant's uncorroborated confession.   We disagree.

> "The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice."   R. 3:20-1. However, a trial judge will set aside a jury verdict as against the weight of the evidence only where "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." *Ibid.*

> First, there was sufficient evidence presented during the trial corroborating defendant's statements to Detective Wilson. Witnesses placed defendant and Keets at the scene prior to the shooting; saw Keets leave the apartment with a gun; heard a

14

> gunshot; heard Keets say, "Let's get out of here"; saw defendant and
> Keets back in the apartment shortly after the gunshot was heard;
> heard Keets say the shooting was an accident; and heard defendant
> say Keets did "something stupid." Additionally, the medical
> examiner's testimony that Perez had a one-and-one-quarter-inch
> laceration on his head was consistent with a strike to the head with
> a gun, further corroborating defendant's confession that he struck
> Perez in the head with his gun. Because of the corroborating
> evidence and testimony, the trial court properly denied defendant's
> motion.

*Green*, 2012 WL 2401674, at *5.

When a petitioner presents a claim challenging the sufficiency of the evidence provided at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[ ] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.*

Petitioner was convicted of felony murder, N.J.S.A. 2C:113(a)(3) (Count One); second-degree armed robbery, N.J.S.A. 2C:15-1(a)(1), as a lesser-included offense of first-degree robbery

(Count Two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)

(Count Three); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count

Four).   A person commits robbery if, during the course of committing a theft, "he inflicts bodily

injury or uses force upon another.   An act shall be deemed to be included in the phrase 'in the

course of committing a theft' if it occurs in an attempt to commit theft or in immediate flight after

the attempt or commission."   N.J.S.A. 2C:15-1(a)(1).   Felony murder is committed

> when the actor, acting either alone or with one or more other
> persons, is engaged in the commission of, or an attempt to commit,
> or flight after committing or attempting to commit robbery . . . and
> in the course of such crime or of immediate flight therefrom, any
> person causes the death of a person other than one of the
> participants.

N.J.S.A. 2C:11-3(a)(3).

As summarized by the Appellate Division, Petitioner told Detective Wilson that when he

and Keets saw Perez looking to purchase drugs, Keets ordered defendant to get "the other gun,"

which was broken.   He admitted they planned to rob Perez.   He further admitted that he struck

Perez on the back of his neck with the broken gun, forcing Perez to bump into Keets, which caused

Keets's gun to go off, fatally wounding Perez.   There was sufficient evidence presented during

the trial corroborating these statements to Detective Wilson.   Specifically, witnesses placed

Petitioner and Keets at the scene prior to the shooting; saw Keets leave the apartment with a gun;

heard a gunshot; heard Keets say, "[l]et's get out of here"; saw Petitioner and Keets back in the

apartment shortly after the gunshot was heard; heard Keets say the shooting was an accident; and

heard Petitioner say Keets did "something stupid."   *Green*, 2012 WL 2401674, at *5.   Finally,

the medical examiner's testimony that Perez had a one-and-one-quarter-inch laceration on his head

was consistent with a strike to the head with a gun, further corroborating Petitioner's confession

that he struck Perez in the head with his gun.   *Id.*

Having considered all said evidence, the Court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.   There was sufficient evidence for the jury to convict Petitioner of felony murder, robbery, possession of a weapon for an unlawful purpose and third-degree unlawful possession of a weapon.   While Petitioner may point to other evidence which disputes the testimony of the various state witnesses, such evidence goes to weight rather than sufficiency.   The Court must determine whether any rational trier of fact could have found him guilty beyond a reasonable doubt when viewed in the light most favorable to the prosecution.   The Court finds that such a rational trier of fact could in this matter.   Accordingly, the Court finds the state court properly denied Petitioner's request for a new trial based on insufficiency of the evidence and that decision is not contrary to, and did not involve an unreasonable application of, clearly established Federal law.   Petitioner is not entitled to habeas relief on this ground.

### D.        Ineffective Assistance of Counsel (Grounds Four and Five)

In his fourth ground for relief, Petitioner argues that trial counsel failed to effectively present Petitioner's defense, which was that he did not confess to aiding and abetting a robbery; rather, the statement was actually "an agreement for petitioner's cooperation in the murder investigation, and that there was no proof of a robbery to support a felony murder charge."   (Pet. at 8).   In his fifth ground, Petitioner argues that trial counsel failed to adequately confer with him about defense strategy which resulted in the failure to call certain witnesses and address particular cross-examination topics.   (Pet. at 14).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective.   First, a petitioner must show

17

that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all relevant circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome,

18

but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.   The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).   A reviewing court may address the second prong first. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"   *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard."   *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself."   *Id.*   Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential."   *Id.* (quoting *Pinholster*, 131 S. Ct. at 1403).   Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)."   *Id.* (internal quotation marks and citations omitted).

In his fourth ground for relief, Petitioner argues that trial counsel failed to effectively present Petitioner's defense, which was that he did not confess to aiding and abetting a robbery; rather, the "confession" was actually and agreement to cooperate in the murder investigation "and that there was no proof of a robbery to support a felony murder charge."   (Pet. at 8).   Petitioner alleges that there was support for this contention because his written statement contained a

19

question mark when discussing the robbery and was not a declarative statement.[3]  (*Id.*).  He claims it was a question because he was making sure he was saying the right thing for police. (*Id.*).  According to Petitioner, his counsel was ineffective for failing to present this defense.

Petitioner raised this argument in his PCR petition, where it was denied.  Specifically, the PCR court found that he was "procedurally barred" for his claim that trial counsel was ineffective for failing to properly present his defense because Petitioner's

> allegations that he did not confess to the robbery was zealously pursued by trial counsel.  Further, the argument was again pursued by appellate counsel and rejected by the Appellate Division. Defendant also argued that there was no corroboration that a robbery occurred nor corroboration for his confession in his motion for new trial and on direct appeal.

(D.E. No. 12-12, PCR Court Opinion at 10).

Contrary to Petitioner's arguments, it clear from a review of the state court record that counsel did in fact argue that Petitioner did not confess to the robbery, as allegedly evidenced by the question mark in Petitioner's written statement.  Counsel did so multiple times during the cross-examination of Detective Wilson, (D.E. No. 12-23, Ex. 5T, Trial Tr. 162:12–170:12;176:16–177:2) and during his summation to the jury (D.E. No. 12-29, Ex. 11T, Trial Tr. 63:21–24; 64:14–22; 101:16–102:16; 70:13-71:1).  During one exchange in particular, counsel repeatedly inquired of Detective Wilson about the meaning of the question mark:

> A. Well, he gives an answer.
> Q. All right, read the jury the answer?
> A. To rob the guy.
> Q. Work with me here. It says to rob the guy?

---

[3]     The written statement reads as follows:

> Q:     Why did Troy tell you to go get you gun, What was the Planned?
> A:     To robbed the guy?

(D.E. No. 12-1, State's Brief and Appendix on Direct Appeal, Appendix at 24a, Voluntary Statement of Richard Green, June 3, 2005).

> A. To rob him.
> Q. Is there a period there or is there a question
> mark there?
> A. Question mark.
> Q. He's asking you what the plan was to rob the guy, isn't that a
> question he's asking?
> A. No, he's asking, he's answering the question above.
> Q. With a questions mark next to it?
> A. I can't answer with the question mark there, sir, I didn't type it.
> Q. Wait a minute. You just told me that every question has a
> question mark next to it, and every other statement has whatever
> punctuation that goes with it. We just went through that, right?
> A. Yes, sir.
> Q. And so that particular question is asked what was the plan and
> there is a question mark, right?
> A. Yes, sir.
> Q. And the answer to you has a question mark by it as well, right?
> A. Yes, sir.
> Q. He's asking you if we are to believe the statement to rob the guy?
> Is that what he's asking you, isn't that what it says in the statement
> he's asking a question?

(D.E. No. 12-23, Ex. 5T, Trial Tr. 167:3-168:5).   Therefore, to the extent Petitioner claims his

attorney did not raise the question mark in the statement as an issue, he is incorrect.

Petitioner's other arguments relate generally to counsel's alleged failure to argue that there

was no proof of robbery nor was there any corroboration for his statement.   However, the record

is replete with counsel's arguments on this topic, including, but not limited to, his summation (D.E.

No. 12-29, Ex. 11T, Trial Tr. 59:8–16; 63:12–65:13; 67:5–68:5 & 72:1-12) and in his arguments

during his motion for a new trial (D.E. No. 12-32, Ex. 14T, Trial Tr. 3:9–20:1).   For example, in

the motion for a new trial, counsel made the following argument:

> So where is the conduct, separate and apart from the defendant's
> statement, that would say that we were in the course of committing
> this act? There's nothing. There is absolutely not one bit of evidence.
>
> You don't hear from anyone saying that the guy had money other
> than the money that was found on him. You don't hear anybody
> saying that the guy was doing anything -- I mean, one of the

witnesses even said that it's a drug deal gone bad or something to
that effect, that Troy comes back and said it was a drug deal gone
bad, which means then, separate and apart from this now you have
an independent and you have actual independent evidence that
suggests this is why the guy's items are out of his pocket, because
it's a drug deal gone bad, he's trying to find money to purchase drugs,
he's anticipating purchasing drugs.

You've got one statement from the defendant saying it's a drug deal
gone bad. So you've got independent corroboration that there was
something going on the hallway that had the relationship to drugs,
not relationship to robbery. Nothing here in this case suggests
robbery, except the defendant's statement. And for him to be
convicted of his own statement, having not testified to it, it outside
of the parameters of what we try to do in the law, and this is why
there has to be independent corroboration of the statement and the
State has to prove robbery, and we suggest they haven't, beyond a
reasonable doubt.

(D.E. No. 12-32, Ex. 14T, Trial Tr. 17:22-18:25).

Because a review of the trial record reveals that counsel did make the various arguments
Petitioner identifies, the Court finds that he cannot establish the first prong of *Strickland* and
accordingly his fourth ground for habeas relief fails.   *See Strickland*, 466 U.S. at 697–98
("[F]ailure to satisfy either prong defeats an ineffective assistance claim"); *Jenkins v. Bartkowski*,
No. 10-4972, 2014 WL 2602177, at *13 (D.N.J. June 11, 2014) (denying ineffective assistance
claim where counsel had raised the complained-of issues).

In his final ground, Petitioner argues that trial counsel failed to adequately confer with him
about defense strategy which resulted in the failure to call certain witnesses and address particular
cross-examination topics.   (Pet. at 14).   Specifically, Petitioner wanted to call Joanna Soler to
testify at trial about "Jiot Risot."[4]   (Pet. at 14).   According to Petitioner, Mr. Risot "had the only
motivation to commit the crime due to his current girlfriend being the ex-girlfriend of the victim."

---

[4]      Based on the record in state court, it appears this individual's name is actually "Jiot Rosado."   (D.E. No. 12-
12, PCR Court Opinion at 9).

22

(*Id.*).   Petitioner also alleges that trial counsel failed to address certain topics on cross-examination that Petitioner raised to him.   (Pet. at 14).   Petitioner does not provide any further information about these cross-examination failures.

Petitioner raised these issues in his PCR petition, where they were rejected by the state court:

> Defendant argues that he received ineffective assistance of counsel because trial counsel failed to adequately confer with defendant about his defense strategy.   Defendant alleges that trial counsel failed to call Joanna Soler as a defense witness.   Defendant contends that Ms. Soler was a girlfriend of both Mr. Perez and another individual named Jiot Risot.   Mr. Risot had been investigated as a possible suspect for Mr. Perez's murder.   Defendant contends that Ms. Soler should have been called before the jury to show that Mr. Risot had a motive to kill Mr. Perez due to jealousy.   Defendant failed to proffer what Joanna Soler's testimony would be had she testified.   Defendant is relying upon four different conflicting statements Ms. Soler provided to the police at the time of the investigation.   Defendant has failed to demonstrate how these conflicting statements would have altered the outcome of the proceedings.   In her second statement, Ms. Soler implicated Jiot Rosado in the victim's death, stating that she arranged for the victim and Rosado to meet the night in question and that the following day, Rosado told her that he killed the victim.   In her final statement to the police, Ms. Soler indicated that she had lied during her previous statements, Ms. Soler's statements were inconsistent and not corroborated by any other witnesses or evidence.   There is no evidence to support a claim that her testimony would have altered the outcome of the trial.   In addition, the trial record indicates Ms. Soler was unavailable.   The petitioner has not presented any facts to the contrary.
>
> Further, defendant contends that trial counsel did not take his suggestions for cross-examination of state witnesses.   Defendant contends that that there were inconsistencies between Detective Wilson's grand jury and trial testimony and that trial counsel failed to cross-examine him about said inconsistencies.   Further, trial counsel failed to discuss the approaches he would take to cross-examine several state witnesses.   Defendant contends that as result of this failure to confer about cross-examination, the jury did not get a fair picture of the evidence.   The record shows that defense

23

> counsel utilized the grand jury transcripts during an aggressive and
> thorough cross-examination of Detective Wilson.   Defendant does
> not outline what inconsistencies were present in Detective Wilson's
> testimony that were not used nor how they would have altered the
> outcome of the case.   As a result, defendant has failed to
> demonstrate ineffective assistance of counsel on the part of his trial
> attorney.

(D.E. No. 12-12, PCR Court Opinion at 9–10).   On appeal, the Appellate Division upheld the

lower court's decision.   *State v. Green*, No. A-3584-14T2, 2017 WL 1034556, at *2 (N.J. Super.

Ct. App. Div. Mar. 17, 2017).

Contrary to Petitioner's assertions, the state court record reveals that his attorney was aware

of Ms. Soler and Mr. Rosado and he specifically cross-examined Detective Wilson about both

individuals.   (D.E. No. 12-23, Ex. 5T, Trial Tr. 14:7–22:22; 207:24–210:25).   Detective Wilson

testified that both the victim and Mr. Rosado were dating Ms. Soler at the time of the victim's

murder.   (*Id.*).   In addition, Petitioner's attorney did not "fail to investigate" Ms. Soler as a

possible witness; counsel informed the court that he was attempting to locate her but his

investigator learned that she had left the country.   (*Id.* at 218:11–14).   Petitioner has not disputed

this statement by counsel or pointed to contrary evidence.

The state court also reviewed Ms. Soler's four statements to police, which at various times

implicated and exculpated Mr. Rosado in the death of Mr. Perez, and concluded there was no

evidence to suggest her testimony would have altered the outcome of the trial.   (D.E. No. 12-12,

PCR Court Opinion at 9–10).   Her final statement to police indicated that Mr. Rosado was not

involved and that all her previous statements had been lies.   Having considered the PCR court's

conclusion that Ms. Soler had left the country and the lack of evidence as to what her testimony

would have been had she been called to testify, this Court finds that the state court's rejection of

his ineffective assistance of counsel claim on this ground was not contrary to, or an unreasonable

24

application of, clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented.  *See Duncan*, 256 F.3d at 201–02 (observing that a showing of prejudice "may not be based on mere speculation about what the witness[ ] [his attorney] failed to locate might have said") (quoting *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)); *Gregg v. Rockview*, 596 F. App'x 72, 77 (3d Cir. 2015) (*Strickland* requires that "[c]ounsel . . . make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

The Court finds Petitioner's claim regarding his counsel's cross-examination of Detective Wilson to be similarly without merit.[5]  As stated by the PCR court, counsel conducted a thorough cross-examination of Detective Wilson, using his grand jury testimony to do so when necessary. (D.E. No. 12-12, PCR Court Opinion at 9–10).   The cross-examination of Detective Wilson was in-depth and far-reaching.   The various questions Petitioner contends were lacking, (such as that he corrected his name and date upon reviewing his statement, who took his first statement and why weren't they called to testify) are not such that there is a reasonable probability that the result of the proceeding would have been different.   (D.E. 12-8, Petitioner's Brief and Appendix in Support of PCR Petition, Pro Se Addendum at Da[6] 26–28).   Accordingly, the state court's rejection of his ineffective assistance of counsel claim on this ground was not contrary to, or an unreasonable application of, clearly established Federal law; nor was it based on an unreasonable determination

---

[5]      Petitioner does not provide any specific information regarding counsel's alleged deficiencies during his cross-examination of the state's witnesses.   The Court can only surmise that it is the same issue regarding Detective Wilson's testimony he raised in his PCR petition in state court.   (D.E. 12-8, Petitioner's Brief and Appendix in Support of PCR Petition at 13).   He discusses the testimony of other state witnesses, but it does not appear he had an issue with their cross-examination.   (*Id.* at Da 28–29).   In fact, the allegedly problematic testimony of the individuals is clearly contained in the record.   Instead, it appears that Petitioner highlighted the testimony of these individuals for the PCR court because he believed that it generally shows a lack of corroboration for his confession.   (*Id.* at Da 28)

[6]      The Appendix submitted in the PCR court was paginated in numerical order, with the prefix of "Da."

of the facts in light of the evidence presented.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, no certificate of appealability shall issue.

## V.    CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.

 *s/Esther Salas*
**Esther Salas, U.S.D.J.**
